UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

NATHAN EDLIN,

          Plaintiff,

      v.

ANDREW SAUL,

          Defendant.

Case No. 18-cv-03423-RMI

**ORDER**

Re: Dkt. Nos. 26, 27

Plaintiff, Nathan Edlin, seeks judicial review of an administrative law judge ("ALJ")

decision denying his application for disability insurance benefits and supplemental security

income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the

ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the

"final decision" of the Commissioner of Social Security which this court may review. *See* 42

U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge

(dkts. 13 & 18), and both parties have moved for summary judgment (dkts. 26 & 27). For the

reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny

Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

"substantial evidence" appears throughout administrative law and direct courts in their review of

factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

determining whether the Commissioner's findings are supported by substantial evidence," a

district court must review the administrative record as a whole, considering "both the evidence

that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.

Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005).

## PROCEDURAL HISTORY

On January 8, 2014, Plaintiff filed applications for disability insurance benefits and

supplemental security income, alleging an onset date of December 1, 2012, as to both applications.

*See* Administrative Record "*AR*" at 45.[1] The ALJ denied the application on February 16, 2017. *Id*.

at 54. The Appeals Council denied Plaintiff's request for review on April 23, 2018. *Id*. at 1-4.

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff, who is now 37 years old, alleges disability due to being afflicted with human

immunodeficiency virus ("HIV"), hepatitis C, as well as a type of cancer affecting people with

immune deficiencies, known as Kaposi's sarcoma, which causes lesions to grow in the skin, the

internal organs, and throughout various other bodily systems. *See* Pl.'s Mot. (dkt. 26) at 6-12.

Plaintiff was also diagnosed with posttraumatic stress disorder ("PTSD"), recurrent and severe

major depressive disorder, as well as headaches and insomnia. *AR* at 332. At the heart of

Plaintiff's assignments of error, is the ALJ's evaluation of Plaintiff's mental health disorders and

his Kaposi's sarcoma at Step Three under the catch-all provision of Listing 14.11, which is

satisfied when HIV repeatedly manifests itself in ways that limit daily activities, social

functioning, or the ability to complete tasks timely. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of
attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-13).

14.11(I). Accordingly, the relevant evidence will necessarily relate to the repetition of the manifestations of Plaintiff's HIV, and to the consequential limitations on his ability to function.

In June of 2013, following Plaintiff's HIV diagnosis, Plaintiff experienced the onset of lesions on his arm. *AR*. at 293. Four months later, in October of 2013, he was treated at San Francisco General Hospital for a 1.5 cm skin lesion on his scalp. *AR* at 311. Doctors described it as an "ulcerated pink nodule with associated bleeding," and removed a 0.4 cm layer by conducting a "shave biopsy." *Id*. The biopsied section of Plaintiff's scalp was later subjected to microscopic examination, whereupon the resident pathologist, Dr. Beth Ruben, diagnosed it as Kaposi's sarcoma at a nodular stage and in an ulcerated state. *Id*. The week after his biopsy, in early November of 2013, Plaintiff was treated at the emergency room for scalp pain, nausea, and vomiting; Physicians' notes indicated that Plaintiff "presents with anxiety [and] intermittent shortness of breath today." *Id*. at 290. Notes from that visit also indicated a primary diagnosis of anxiety, adding that the anxiety was related to the growth that had recently been removed from his scalp. *Id*. at 293. On November 30, 2013, Plaintiff contacted the hospital and complained of a new lesion that had appeared at the base of his foot several weeks earlier, and which was "now bleeding for the past 30 minutes" because, Plaintiff had attempted to remedy it by means of a pumice stone. *Id*. at 286. Two days later, Plaintiff was treated at the hospital, and then again the following day at an urgent care clinic, where it was observed that he was covered with scattered lesions on his legs, arms, and back. *Id*. at 281. The attending clinician, Sarah Doernberg, M.D., diagnosed the lesions as AIDS-defining Kaposi's sarcoma, and suggested that Plaintiff "use [a] Dr. Scholl's cushion to reduce [the] pressure on [his] painful sole lesion." *Id*. at 282. These skin lesions continued to appear on the active problem list in Plaintiff's medical records, on nearly a monthly basis, throughout 2014 and well beyond. *See id*. at 265-79, 339-75, 497-521, 523-531.

By August of 2014, Plaintiff's foot lesion was still causing problems; physicians' notes described it as a "rapidly growing, painful, bleeding nodule on the left plantar foot." *Id*. at 339. Plaintiff underwent an "excisional biopsy," wherein "two irregularly shaped fragments of brown soft tissue" were removed and subjected to microscopic examinations. *Id*. Once again, the final pathological diagnosis was Kaposi's sarcoma at a nodular stage. *Id*. Over the next two years,

3

1    Plaintiff underwent chemotherapy, completing six cycles, during which "[h]is [] lesions regressed

2    and became less painful but did not go away completely," however after his final chemotherapy

3    cycle, Plaintiff's physicians noted that the lesions "have grown again and have become painful,

4    particularly the lesion on his left foot." *Id*. at 527-28. Accordingly, in late November of 2016,

5    Plaintiff was referred "for local irradiation of his left plantar foot given that it remains

6    symptomatic." *Id*. at 527. During this same examination, Plaintiff's physicians noted that all four

7    of his extremities were still covered with scattered lesions, and that the painful lesion that

8    persisted on Plaintiff's left foot was now hyper-pigmented, "slightly violaceous," and "covering

9    an area of 6 cm x 6 cm." *Id*. at 528. Accordingly, the medical evidence of record demonstrates

10   persistent manifestations of Plaintiff's HIV infection, in the form of Kaposi's sarcoma lesions

11   covering his arms and legs, between 2013 and late 2016.

12        Regarding the limitations on his activities that result from the manifestations of his HIV

13   infection, Plaintiff was referred by the state agency for disability determination to Caroline

14   Salvador-Moses, Psy.D., for a psychological evaluation in late October of 2014. *Id*. at 330-33. Dr.

15   Salvador-Moses conducted a complete mental status evaluation and noted at the outset that

16   Plaintiff "appeared depressed and anxious, and [that] psychomotor retardation was evident." *Id*. at

17   330. Plaintiff's psychiatric history was described as including depressed mood, insomnia,

18   nervousness, helplessness, loss of interest in usual activities, isolation, history of anxiety, history

19   trauma and abandonment from foster care placement, abuse and neglect as a young teenager,

20   flashbacks, night sweats, and tendencies leaning towards detachment and dissociation. *Id*. at 331.

21   Dr. Salvador-Moses then noted a series of mental status findings. As to attitude and behavior,

22   Plaintiff was observed to be "minimally cooperative as he appeared extremely lethargic and

23   emotionally detached." *Id*. As to mood and affect, Plaintiff appeared depressed, with a flat affect,

24   and found it difficult to maintain eye contact during the evaluation. *Id*. Regarding his "quality of

25   thinking," while Plaintiff's "stream of mental activity was adequately logical," his "[t]hought

26   content was preoccupied with worries and fears." *Id*. Lastly, as to insight and judgment, Dr.

27   Salvador-Moses found that Plaintiff "demonstrated a poor understanding of his illness . . . [and]

28   and a poor ability to make realistic plans and anticipate the consequences of his actions." *Id*. at

4

332. The resulting Axis-I psychological diagnosis was that Plaintiff suffered from a recurrent and severe major depressive disorder, as well as PTSD. *Id*.

Dr. Salvador-Moses found that the combination of Plaintiff's mental and physical conditions, in addition to the side-effects of his many medications, give rise to a number of difficulties in performing ordinary activities of daily living due to persistently low energy levels, fatigue, lethargy, diarrhea, nausea, and poor appetite. *Id*. at 331. Accordingly, Plaintiff has difficulty in attending to his personal care and hygiene, and relies on his partner to do most of the household chores, grocery shopping, and laundry. *Id*. Regarding Plaintiff's "current level of work-related abilities from an emotional and cognitive [] standpoint," Dr. Salvador-Moses opined that Plaintiff experiences extreme limitations in: his ability to make simple work-related decisions; his ability to carry out complex instructions; his ability to appropriately interact with coworkers, supervisors, or the public; his ability to respond appropriately to usual work situations or to usual changes in a routine work setting; and, his ability to maintain persistence. *Id*. at 333. Further, it was opined that Plaintiff experiences severe limitations: in carrying out simple instructions; in understanding and remembering complex instructions; and, in concentrating and maintaining pace. *Id*. Plaintiff was found to be moderately limited in his ability to understand and remember simple instructions; and lastly, Dr. Salvador-Moses opined that if Plaintiff were to be granted benefits, "[h]e will need assistance managing his funds." *Id*. Thereafter, on two occasions (in December of 2015 and in March of 2016), Plaintiff's diagnosis for depression was confirmed and endorsed by a clinical social worker in the course of routine HIV mental health assessments. *See id*. at 487, 493.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

1    the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

2    step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

3    416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

4    the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

5        Here, the ALJ set forth the applicable law under the required five-step sequential

6    evaluation process. *AR* at 46-47. At Step One, the claimant bears the burden of showing he has not

7    been engaged in "substantial gainful activity" since the alleged date the claimant became disabled.

8    *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial

9    gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had

10   not engaged in substantial gainful activity since the alleged onset date. *AR* at 47. At Step Two, the

11   claimant bears the burden of showing that he has a medically severe impairment or combination of

12   impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a

13   slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect

14   on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

15   (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following

16   severe impairments: HIV, Kaposi's sarcoma, hepatitis C, and substance abuse. *AR* at 47.

17   Additionally, the ALJ found that Plaintiff's depression was not severe because it did not cause

18   more than a minimal limitation in his work ability. *Id*. at 48. The ALJ's decision did not evaluate

19   Plaintiff's PTSD, at Step Two or elsewhere. *See generally id*. at 47-53.

20       At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

21   appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

22   burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant

23   is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful,

24   the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.

25   *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or

26   combination of impairments that met or medically equaled the severity of any of the listed

27   impairments. *AR* at 49. Next, the ALJ determined that Plaintiff retained the RFC to perform the

28   full range of work at the light exertional level. *Id*. at 49-52.

1    At Step Four, the ALJ determined that Plaintiff has no past relevant work. *Id*. at 52-53.

2    Lastly, at Step Five, the ALJ concluded that based on the RFC, Plaintiff's age, education, and

3    work experience, that there are jobs that exist in significant numbers in which Plaintiff can still

4    perform. *Id*. at 53. Accordingly, the ALJ concluded that Plaintiff had not been under a disability,

5    as defined in the Social Security Act, from December 1, 2012, through the date of the issuance of

6    the ALJ's decision, February 16, 2017. *Id*. at 53-54.

7                                            **DISCUSSION**

8    Plaintiff raises two issues and contends that the ALJ's finding at Step Three that Plaintiff's

9    impairments did not meet or equal Listing 14.11 was based on legal error, and that the ALJ's Step

10   Three and RFC determinations were not supported by substantial evidence due to improper

11   weighing of the medical evidence. *See generally* Pl.'s Mot. (dkt. 26) at 7-15. Defendant responds

12   to the effect that Plaintiff's impairment did not meet the requirements of Listing 14.11 because

13   Plaintiff neither suffered from pulmonary Kaposi's sarcoma (when the lesions are on the lungs),

14   nor did Plaintiff have repeated manifestations of his HIV that cause marked limitations in either

15   daily living activities, social functioning, concentrating, or maintaining persistence and pace. *See*

16   Def.'s Mot. (dkt. 27) at 4. Defendant submits that the ALJ correctly found that Plaintiff has no

17   more than mild limitations as to daily activities and social interaction because on occasion

18   Plaintiff has assisted his partner with cooking something or doing a household chore, and also

19   because of the suggestion that Plaintiff has "lived with friends and walked to the park, beach or

20   public place on an average day." *Id*. at 5. As to concentration, persistence, and pace, Defendant

21   argues that the ALJ's finding of only mild limitations is justified by the fact that Plaintiff has

22   "reported surfing online, playing on mobile devices, and cleaning at home or wherever he stays,"

23   as well as the fact that on one occasion in December of 2015, "Plaintiff had a linear thought

24   process." *Id*. Lastly, because of these notions, Defendant maintains that "the ALJ reasonably

25   found that the consultative examiner's opinion was not supported by the record," and was

26   therefore due to be discounted. *Id*. at 5-8.

27   In making the Step Three determination that Plaintiff neither had pulmonary Kaposi's

28   sarcoma nor repeated manifestations of HIV infection resulting in some form of marked functional

7

1   limitation, the ALJ gave Dr. Salvador-Moses's opinion "little weight because it is not supported . .

2   . [as] there is no corroborative medical evidence to support the conclusions reached by this

3   examiner." *Id*. at 49, 52. The ALJ's explanation for rejecting the opinion of the only examining

4   psychologist involved in the case was that "[t]he lack of psychiatric treatment is inconsistent with

5   the adverse psychiatric medical source statement." *Id*. On the other hand, the ALJ essentially

6   afforded controlling weight to what appears to be the earlier of two opinions rendered by non-

7   examining state agency consultants. In April of 2014, six months before Dr. Salvador-Moses

8   examined Plaintiff, a non-examining state agency consultant, I. Newton, M.D., reviewed

9   Plaintiff's medical records and simply opined that "with triple therapy" and refraining from

10  substance abuse, Plaintiff "should be able to do a light type of work." *Id*. at 104. Then, three

11  months after Dr. Salvado-Moses's evaluation, in January of 2015, another non-examining state

12  agency consultant, Ida Hiliard, M.D., reviewed Plaintiff's records, including Dr. Salvador-Moses's

13  report, and opined that "the conclusions reached by this source are not considered sufficient for a

14  determination of claimant's functioning at this time. Insufficient evidence." *Id*. at 117. While

15  citing to both of these non-examining physicians' opinions, but speaking in the singular, the ALJ

16  merely noted: "State agency consultant stated that with triple therapy and refraining from

17  substance abuse, the claimant should be able to do a light type of work. [] Light is all benefit of

18  doubt. I give state agency consultant opinion significant weight because opinion is consistent with

19  the evidence of record." *Id*. at 52. Thus, the ALJ essentially rejected the functional limitations

20  opinions expressed by the only examining specialist in matters related to mental health, while

21  ignoring the diagnosis of PTSD entirely. Then, the ALJ ignored Dr. Hilliard's 2015 opinion that

22  there was insufficient evidence for a determination of claimant's functioning at this time while at

23  the same time citing to the opinion and claiming to give it significant weight. In place of these

24  later-rendered opinions, the ALJ gave *de facto* controlling weight to Dr. Newton's 2014 non-

25  examining opinion, which had somehow arrived at the conclusion that Plaintiff should be able to

26  do "a light type of work."

27          About a month before the issuance of the ALJ's decision, in January of 2017, the provision

28  describing listing level HIV infections was reorganized and moved to Listing 14.11. *See* 81 Fed.

8

1  Reg. 86915. The listing provides for nine categories of manifestations of HIV infection that are

2  considered disabling at Step Three. *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §

3  14.11(A)-(I). For present purposes, two of those categories are relevant. First, Listing 14.11(E)

4  specifically provides that pulmonary Kaposi's sarcoma is presumptively disabling, while 14.11(I)

5  is a catch-all provision of sorts, and provides for any repeated manifestations of HIV infection,

6  including non-pulmonary Kaposi's sarcoma, or any mental limitations, resulting in significant,

7  documented symptoms or signs, and causing marked limitations in either: activities of daily living;

8  social functioning; or, in maintaining concentration, persistence, or pace.

9      Here, the ALJ merely determined that Plaintiff does not have pulmonary Kaposi's

10  sarcoma, and then evaluated the functional limitations stemming only from Plaintiff's depression.

11  Due to the fact that Plaintiff's non-pulmonary manifestations of Kaposi's sarcoma were persistent,

12  let alone "repetitive," the ALJ erred in failing to develop the record as to what functional

13  limitations may be associated with the fact that Plaintiff had scattered lesions covering all of his

14  limbs, as well as a rapidly expanding and painful lesion on base of his left foot that continued to

15  bleed and cause problems despite chemotherapy and the irradiation of his foot. While it is true that

16  claimants are ultimately responsible for providing sufficient medical evidence to establish a

17  disabling impairment, it has nevertheless "long [been] recognized that the ALJ is not a mere

18  umpire at [an administrative hearing], but has an independent duty to fully develop the record[.]"

19  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (*per curiam*);

20  *see also Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial

21  rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both

22  for and against granting benefits[.]"); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 ("The

23  ALJ in a social security case has an independent duty to fully and fairly develop the record and to

24  assure that the claimant's interests are considered.") (internal quotation marks and citations

25  omitted). It is also important to note that "[t]he ALJ's duty to develop the record fully is []

26  heightened where the claimant may be mentally ill and thus unable to protect her own interests."

27  *Tonapetyan*, 242 F.3d at 1150; *see also Higbee*, 975 F.2d at 562. In cases where the evidence is

28  either ambiguous, or otherwise inadequate to permit a proper evaluation of a claimant's

9

1    impairments, the ALJ has a duty to "conduct an appropriate inquiry[.]" *Smolen v. Chater*, 80 F.3d

2    1273, 1288 (9th Cir. 1996); *Tonapetyan*, 242 F.3d at 1150. The duty to properly develop the

3    record may be discharged in any number of ways, including subpoenaing the examining and

4    consulting physicians, or submitting questions to them by other means; by providing for the

5    participation of a relevant medical expert at the hearing; or, by ordering another consultative

6    evaluation geared specifically towards determining the parameters of the limitations caused by

7    Plaintiff's non-pulmonary Kaposi's sarcoma. *See Tonapetyan*, 242 F.3d at 1150. In short,

8    pertaining to the rejected limitations opinions expressed by Dr. Salvador-Moses, "if the ALJ needs

9    to know the basis of the doctor's opinion, he has a duty to conduct an appropriate inquiry."

10   *Smolen*, 80 F.3d at 1288. Here, no such inquiry was conducted, at least none that could justify

11   rejecting the conclusions of the only examining doctor to opine on Plaintiff's functional

12   limitations. The ALJ's error in failing to fairly and fully develop the record as to the parameters of

13   Plaintiff's functional limitations was compounded with the fact that the ALJ claimed to have given

14   "significant weight" to Dr. Hilliard's non-examining opinion from 2015 to the effect that there

15   was insufficient evidence for a determination of claimant's functioning at the time. Instead, the

16   ALJ gave *de facto* controlling weight to Dr. Newton's 2014 non-examining opinion, which had

17   somehow arrived at the conclusion that Plaintiff should be able to do "a light type of work."

18         The ALJ also erred in rejecting Dr. Salvador-Moses's opinions as to Plaintiff's functional

19   limitations, as well as by rejecting her diagnosis of PTSD, which the ALJ failed to discuss or

20   analyze at all. Medical opinions are "distinguished by three types of physicians: (1) those who

21   treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

22   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

23   physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a

24   claimant's treating provider is given "controlling weight" so long as it "is well-supported by

25   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

26   other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also*

27   *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). In cases where a treating doctor's opinion is

28   not controlling, the opinion is weighted according to factors such as the nature and extent of the

10

1    treatment relationship, as well as the consistency of the opinion with the record. 20 C.F.R. §

2    404.1527(c)(2)-(6); *Revels*, 874 F.3d at 654.

3          "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

4    state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of*

5    *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*,

6    427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted

7    by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

8    reasons that are supported by substantial evidence." *Id*. (quoting *Bayliss*, 427 F.3d at 1216); *see*

9    *also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating

10   doctor's credible opinion on disability are comparable to those required for rejecting a treating

11   doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough

12   summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof,

13   and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v.*

14   *Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Further, "[t]he opinion of a nonexamining physician

15   cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either

16   an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (9th Cir. 1995); *see also*

17   *Revels*, 874 F.3d at 654-55. It should also be noted that greater weight is due to the "opinion of a

18   specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5);

19   *Revels*, 874 F.3d at 654. Lastly, where a Plaintiff's condition progressively deteriorates, the most

20   recent medical report is the most probative. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.

21   1986).

22         Here, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Salvador-

23   Moses's diagnosis of PTSD, as well as the opined functional limitations stemming from Plaintiff's

24   recurrent and severe major depressive disorder and PTSD. Because the ALJ failed to discuss or

25   analyze the PTSD diagnosis at all, it goes without saying that specific and legitimate reasons were

26   not given in that regard. Accordingly, on remand, the Commissioner is directed to give due

27   consideration to Plaintiff's PTSD diagnosis (of which there is ample evidence in the record), and

28   to reengage the sequential evaluation process from Step Two forward, such as to ensure that all of

1    Plaintiff's impairments and interests are fully and fairly considered. As to Plaintiff's severe and

2    recurrent major depressive disorder, the ALJ's Step Two finding of non-severity (based only on an

3    opinion from a non-examining state agency consultant) was not based on substantial evidence

4    because it is well established that the opinion of a non-examining physician, standing alone, does

5    not constitute substantial evidence. *See e.g.*, *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2

6    (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v.*

7    *Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Also, it should not go without mention that "the step-

8    two inquiry is a *de minimis* screening device [used] to dispose of groundless claims." *Smolen*, 80

9    F.3d at 1290; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (noting the step-two inquiry is

10   intended to identify "claimants whose medical impairments are so slight that it is unlikely they

11   would be found to be disabled"). Further, because step two is a *de minimis* screening device, "an

12   ALJ may find that a claimant lacks a medically severe impairment or combination of impairments

13   only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687

14   (quoting SSR 85-28, 1985 SSR LEXIS 19, 1985 WL 56856 (Jan. 1, 1985)).

15        As to Dr. Salvador-Moses's functional limitations opinions, the ALJ's explanations fell

16   short of the governing standards for specificity and legitimacy. First, the ALJ premised

17   discrediting Dr. Salvador-Moses's opinions on grounds that "the lack of psychiatric treatment is

18   inconsistent with the adverse psychiatric medical source statement and there is no corroborative

19   medical evidence to support the conclusions reached by this examiner." *AR* at 52. The record

20   reflects that Plaintiff spent significant portions of his life in homelessness and poverty, and that his

21   childhood was marked with abuse, trauma, and neglect. *See e.g., id*. at 488-89, 330 (Plaintiff

22   moved out of his parents' home at 16 and was raised in foster care thereafter; he has had no

23   contact with his mother since he was 17; he became addicted to amphetamines at age 20; and, he

24   lived in homelessness for a period of his life until he was allowed to move in with his partner). In

25   certain cases, an ALJ may impugn credibility "based on an unexplained or inadequately explained

26   failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d

27   1104, 1112 (9th Cir. 2012). However, disability benefits may not be denied based on a claimant's

28   failure to obtain treatment that he cannot afford. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.

1995). Additionally, courts are reluctant to "chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)); *see Garrison v. Colvin*, 759 F.3d 995, 1018, n.24 (9th Cir. 2014). Thus, contrary to the ALJ's reasoning, the lack of psychiatric treatment does not in any way impugn or diminish the functional limitations opined by Dr. Salvador-Moses; instead, if anything, the lack of psychiatric treatment only tends to further evidence Plaintiff's poverty and lack of resources.

The ALJ also premised discrediting Dr. Salvador-Moses's limitations opinions on the notion that they are rendered invalid because Plaintiff told the examiner that he had refrained from abusing amphetamines for some unspecified amount of time but that there were indications elsewhere in the record "which document continued use." *AR* at 52. The court finds that this explanation is not specific because it fails to identify any relevant time frames, which leaves too much room for uncertainty. Likewise, the ALJ's reasoning is not legitimate because there was no explanation as to why Dr. Salvador-Moses's diagnoses of two mental health disorders and their resulting limitations would be called into question by Plaintiff's longstanding struggle with drug addiction, of which Dr. Salvador-Moses was aware. Accordingly, the ALJ erred in rejecting this evidence; and, on remand, the Commissioner is instructed to either give controlling weight to the opinions expressed by Dr. Salvador-Moses, or to sufficiently develop the record in light of the guidance provided herein.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 26) is **GRANTED**, and Defendant's Motion for Summary Judgment (dkt. 27) is **DENIED**. The case is **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

Dated: March 24, 2020

ROBERT M. ILLMAN
United States Magistrate Judge

13